The next case is number 063010, Terrassa Johnson against the Court Services and Defender Supervision Agency for the District of Columbia. Mr. Crump. May it please the Court. As counsel for the appellant, I shall dictate to you the following road map. First, the record contains no evidence that Ms. Johnson failed to follow agency procedures. Number two, the record contains absolutely no evidence that Ms. Johnson falsified government documents with the intent to deceive the agency. Number three, backdating entries into the smart computer database cannot be considered falsification of records. And number four, the Board failed to analyze credibility pursuant to its own precedent in the case of Hillenby Department of the Army prior to rendering its final decision to affirm the removal of Ms. Johnson. And finally, the penalty of removal imposed on Ms. Johnson was excessive. Now, in looking at this, the Court should follow the following standard of review. Longstanding precedent in this Court dictates that if the Court shall only affirm the decision of the Board if the decision is either arbitrary, is obtained with procedures that aren't required by law, or the regulation had been followed, or the evidence itself is not substantiated from the record. And this is pursuant to the courts holding in Keevan R. v. Office of Personnel Management. Now, the case that we want you to take a look at is the Supreme Court case that says the substantiality of the evidence test must take into account whatever in the record fairly detracts from the evidence. Now, this case basically hinges on a couple of incidents involving Ms. Johnson. The first, with respect to the first issue, discusses offender Victoria Langdon and her alleged violation report. Jackson was given orders to complete an alleged violation report by his supervisor, Mr. McKinley Rush. There were several outstanding ABRs that were left incomplete due to a Christmas holiday leave that were taken by several CSOs. In this instance, Jackson allowed these ABRs to sit and be unattended to. There was a conflict in instruction. At the time, Ms. Johnson, as I said before, was out on holiday leave. Ms. Jackson was under agency procedure. Mr. Jackson was supposed to take control of these ABRs and complete them. Now, this was agency protocol. However, he didn't do so. In this instance, he passed the buck, so to speak, and said, no, I'm not going to do these ABRs. I'm going to allow Ms. Johnson and her fellow colleagues to do these ABRs. In this instance, when she returned from holiday leave, she had several outstanding ABRs that were left on her desk, one being the Victoria Langdon ABR. Mr. Jackson then tells her by direct email that you must finish this Victoria Langdon ABR immediately. This was on January 7, 2003, or 2002, when she immediately came back from Christmas holiday. Well, this confused Ms. Johnson because she thought that his supervisor had told him to complete the ABRs himself. Now, agency precedent is that if you allow CSOs to go off on holiday leave, then you have the responsibility to make sure that these ABRs are completed yourself. Well, then, when Ms. Johnson comes back from holiday leave on January 7, he forwards this email. She, as I said, was in complete confusion and did not, after doing the other ABRs, did not actually complete the ABR until January 13. He then tells her this is a violation. She failed to follow agency procedures. Well, the reason for that, and it states in page 54 of the record, is because there were conflicting instructions. Of course, the agency protocol requires that ABRs are done within a three-day period. The agency would like to lead you to believe that it should have been done by Ms. Johnson within the three days. However, it wasn't because of the simple fact that she received conflicting instruction from Johnson Jackson's supervisor, McKinley Rush. She believed that his instruction, telling Mr. Jackson to complete the ABR, was to take precedent over any outstanding ABR she would have done when she came back from holiday leave. But all of these facts were considered before the board, and we're not here to reassess and reweigh the evidence. We can only review the evidence to determine whether the decision was supported by substantial evidence, whether it was arbitrary or capricious. But here there is evidence that these reports were not completed on time, and I understand what you're saying, and you obviously disagree with the decision. But you've got a very tough burden to overcome the substantial evidence findings by the board here. Well, I think that the court needs to take into consideration. We're looking at a substantial evidence test. The board must, as leading up to my fourth issue, the board must take into the fact that credibility analysis must be done by the presiding official. When he looks at the evidence and he determines that there's enough evidence to affirm the agency removal, he needs to take consideration of all the evidence. And there was testimony from Ms. Johnson's colleagues, from several of Ms. Johnson's colleagues, not only from her colleagues, but from Mr. Jackson's secretary herself, that said that counters what Mr. Jackson, what his side of the story was. Now, the court in the Department of Army basically tells you or tells us that when you make or when you weigh the factors, you must take in everyone's evidence. You must take in the testimony of the entire, must take in the totality of the evidence, so to speak. If you look at the initial decision by Judge Ben-Ami, he failed to do that. In this instance, he did not even consider the credibility factors or the testimony of Ms. Jackson's colleagues. How do we know that's the case? Because it is stated in the initial decision. In the initial decision, he only weighs the evidence, weighs Mr. Jackson's testimony versus Ms. Johnson's testimony. That was an absolute failure. That is against the board's law. The board directive, as stated out in Larson v. Department of Army, states that before a board makes its decision, it must go through a complete set of analysis. The first is it must identify the factual issues of dispute. It must summarize all the evidence, which Judge Ben-Ami did not do in his initial decision. He must state which version he or she believed. This is crucial because of the fact that he was supposed to, in his initial decision, go through the testimony of each particular employee. And we're talking about three employees who corroborated the testimony of Ms. Johnson. He was supposed to state why he did not believe their testimony. In this case, he did not do that at all. He just simply said that Ms. Johnson, you know, we believe Mr. Jackson because Ms. Johnson had some issues, and therefore, we affirm the agency decision. That was absolutely wrong, and it was absolutely crucial that he consider all of the evidence in this case rather than the evidence of just agency officials and Mr. Jackson himself. Now, to go to my second point, the record contains no evidence that Ms. Johnson falsified government documents with the intent to deceive. Mr. Croft, before you get to that point, let me interrupt you for one second, if you would. There were three charges here. Is that correct? Yes. The first charge had three different specifications. The second charge only had one specification, falsification issue, and the third charge had two specifications. The third charge had two specifications. That's correct. One dealing with Langley, one dealing with Diggs. Correct. Now, if we find that there's substantial evidence to support any one of the three specifications in the first count, the first charge, and any one of the two in count number three, can we support the determination made by the AOJ? Absolutely not. Absolutely not. Based on my analysis of Hill and Bee Department of the Army, because in looking at all the specifications, we're basically looking – this is a credibility issue here. You know, the board has directives that the court has affirmed that says that when you have a he says, she says incident, there's certain factors that need to be followed. With regard to all of the specifications, we're talking about what Mr. Jackson said versus what Ms. Johnson and her colleagues are saying. I'm sorry. But for a moment, let's go back to the first charge. If we find, basically, that charge, for instance, three specifications in the first charge, the failure to follow procedures involving the failure to complete the Langley AVR, and then there was a failure to follow procedures in the granting of the carpenter travel permit, if we find that one of those is supported by substantial evidence, can we support the charge? You can support the removal based upon one specification, correct. But we submit to you that there is no evidence in any of these specifications. There is absolutely nothing to substantiate these charges in the record. And furthermore, there is a credibility issue that was not taken into account when the presiding official, Judge Ben-Ami, made his decision to support the removal of Ms. Johnson. You don't think we should send it back for redetermination of whether or not the failure to find on all three charges? I think that is an alternative. But my first submission to you is that there is absolutely no evidence and that this case should be reversed. But if the court determines, as an alternative, again, secondary to my first argument, that there is a failure to do the credibility analysis, then I say, yes, you must remain in an effort so that we can have further facts be submitted to the record. Or I should say the judge, the administrative judge, can do a better analysis in his decision. When I get to my second, my second point is that the record contains absolutely no evidence that Johnson falsified agent documents. And this goes into a travel permit, in which case the agency is saying that Ms. Johnson forged the signature of her supervisor. And we say that this is absolute nonsense because of the fact that testimony in the record indicates that Ms. Johnson or Mr. Jackson actually gave his employees the authority to sign on his behalf with a signature stamp. Now, in this particular case, Ms. Johnson didn't actually use this signature stamp. She actually submitted the paperwork to Mr. Jackson's secretary as she would normally do. Now, the question is, and this is a credibility issue, is whether or not she actually did so. The agency would have you believe that it was not submitted, that she forged the travel permit in its entirety. She forged all the information on the permit and that she then submitted it in violation of the United States Parole Commission guidelines and other various statutes. So when I look at that, when the court looks at the Carpintero issue, we submit that there are two—if you take a close examination of the travel permit itself, there is a— the agency would have you believe that she, like I said, forged the entire document. She authorized—unauthorized or enabled the offender to take travel, which she was not supposed to do. In this instance, she actually verified that the offender would be taking travel on a date. Ten days later, the offender actually came to her again, which case she signed off on the permit, and then Ms. Johnson actually submitted the permit to Mr. Jackson's secretary. Second of all, the agency would have you believe that she had violated United States Parole Commission guidelines when she failed to—when she actually failed to go by their absolute protocol. And we say that is absolute nonsense because of the fact that they were not even aware. Ms. Johnson nor any of the CISOS employees were not aware of any such guidelines, and the testimony in the record illustrates that. And if I may, I know I'm over my time. I'd like to preserve my minute for rebuttal. Okay. Thank you, Mr. Crump. Mr. Alexander. May I please the Court? The record contains substantial evidence to support the decision of the MSPB. Mr. Alexander, what about the credibility determinations? Well, Your Honor, there's a fundamental false premise contained in Ms. Johnson's argument regarding credibility. The fact is that the administrative judge did specifically consider all of the testimony in the record. If you look at Joint Appendix page 22, the administrative judge specifically references testimony from the other witnesses, Ms. Downing and Ms. Russell, that Ms. Johnson contends was not considered. So it's clear that the administrative judge did consider all of the testimony in the record and weighed the credibility of one version of the facts versus the other version of the facts. Now, Mr. Brown and Mr. Downing and Mr. Russell each testified, right? Correct. There was no indication of consideration of credibility of all three of them. Was there consideration on the aspect of trying to determine whether all of the witnesses were credible, even the ones who were favorable for Ms. Johnson or not? The specific discussion of credibility, Your Honor, where the administrative judge specifically says, I am making a credibility determination, occurred in Specification 1B. And in that discussion, the administrative judge specifically compares the testimony of Ms. Johnson and Mr. Jackson because in that particular specification, those are the two relevant witnesses. What about Charge 2? Well, in Charge 2, the administrative judge doesn't specifically say that he's making a credibility determination. Is he required to do that? There is opposing testimony in that. Well, what the administrative judge did in Charge 2 was weigh the evidence of record, the documentary evidence, the testimonial evidence, and it didn't come to a credibility determination in the sense that there was no other way. You know, the credibility determination arises where there's no way to make a determination other than to evaluate unsupported testimony by one party versus testimony of another. If there is supported documentation, it doesn't come to credibility. In other words, it's not an issue of an event that only these two people could know. There's no other corroborating evidence one way or the other. In Charge 2, there's all sorts of corroborating evidence to support the version of the facts that the government submitted to the court. What about Charge 3B? Testimony of CSO Kimberly Downing, CSA Monique Brown, and CSO Kendra Russell. The ALJ does not address any of them. It doesn't corroborate. They do corroborate Johnson's claim, but he doesn't address it. That testimony is, by the evidence of record, clearly incorrect. In other words, Charge 3 is the falsification of computer entries, the backdating issue. And there's testimony that from the agency witnesses, Ms. Johnson and her colleagues, that it was agency policy to backdate. They say, no one told us not to. It wasn't agency policy. It was a procedure that was undertaken in the office by everyone in the office, according to three employees. Right. They say that. However, the evidence of record clearly shows that that's just not true. So we have evidence talking about... Where is that? What? Your Honor, there is a policy, a written policy statement, regarding timeliness of entries into the SMART system. That is contained at page 286 through 288 of the Joint Appendix. Specifically at 288, it says, all running record entries and status changes must be made to the offender record within 48 hours of the event. In other words, you cannot go back days or weeks later and enter information as though you're entering it, and act as though you've entered it on a timely basis. I understand what the policy was, but if the policy was not followed in the office, does that mean that the policy is accepted by the process of the individuals working within that office? Your Honor, the evidence... Is continuing to disregard the policy? I understand your question, Your Honor, but the evidence does not support the premise of the question. In other words, if we look at the record, there is specific testimony from Mr. Jackson that he was unaware that there was backbiting going on. If you look at his declaration that he gave to the Office of Special Counsel Investigators, he specifically says at page 218 of the Joint Appendix, specifically says he did not know that backdating was an issue. At the bottom of that page, backdating smart entries was not a problem that I was aware of, and did not recognize the need to specifically address it during previous staff meetings. So, the testimony that this was prevalent in the agency is specifically contradicted at this part of the record. Well, but isn't that really a determination? I mean, he is the supervisor, isn't he? Isn't he trying to cover his tracks, possibly, by all of the people in the office conducting policy in one way and against the written policy? If you look at what occurred in the record, you can see that immediately upon Mr. Jackson becoming aware of the backdating, he immediately referred that to his chain of command as an issue of grave concern. And again, there is a memorandum in the record. I'll find it in a moment, Your Honor, if you'll bear with me. But the record suggests that immediately upon realizing that backdating had occurred, Mr. Jackson contacted the computer folks at the agency and asked them to run an examination to see if backdating had occurred. And that's at page 274 through 277. And there is a memorandum that I will find that specifically addresses the issue to his chain of command as a matter of priority immediately upon becoming aware of the issue. So the contemporaneous record demonstrates that this was not something that the agency realized was going on. Maybe the boss was watching to find out what was going on, right? Well, Your Honor, as soon as they became aware, and again, Mr. Jackson says that as soon as he became aware of this issue, he immediately conducted training with his team to ensure that they no longer did it. He immediately addressed it at a staff meeting to say, if you're doing this, stop doing it. So it's simply not a credible statement for Ms. Johnson and her witnesses to say this was prevalent and everyone knew it. It's simply not supported by the record. And so to the extent that we're talking about a credibility issue, it's simply not a credible statement to make. And an administrative judge may make a credibility determination by looking at the totality of the evidence and saying this is simply not supported by the record and that's what happened here. Even if the administrative judge didn't specifically say that he did that, clearly that was his finding. If I may, Your Honor, address the penalty. Ms. Johnson contends that the penalty was unreasonable even if she did commit some of these offenses. Removal was too harsh of a sanction. And we would submit, Your Honor, that removal was an appropriate sanction here. It's important to bear in mind that we're talking about law enforcement activities. And what's happening here is falsification of records that are going to be used in court proceedings that are used to substantiate conduct by offenders that could result in them being rearrested, being found in violation of their parole. And certainly the offenders are entitled to a clear record that is updated on a consistent basis. In fact, it's to their detriment if the records are not updated regularly. We could have a situation, and the record discusses the possibility of this, where an offender has met all of her duties to report to her parole officer, yet the record is not updated to reflect that fact, the offender could be improperly rearrested. In addition, these records are important to protect the public. There's a dual mission at the agency to protect the public and to protect the offenders. The public is not well served when travel permits are not issued in a proper fashion, when there is improper, not updated information contained in the records that are used by law enforcement agencies, by the U.S. attorneys. And so it is not simply a paperwork drill where some federal bureaucrat is shuffling paper from one side of the desk to the other for no particular purpose. This is to maintain the integrity of the criminal justice system to protect the public and to protect the offenders. And when Ms. Johnson's chain of command says that they have lost confidence in her ability to honestly and forthrightly fulfill her duties, that suggests that removal was an appropriate penalty under these circumstances. Thank you, Mr. Alexander. Thank you. Mr. Crump. First of all, I'd like to address backdating. The court must consider what he said is absolutely wrong as far as his definition. Backdating is simply this, an offender comes to the agency, okay, and let's say she comes on January 1st, 2001, okay, she may have been arrested on December 31st. What the agency employees would do is rather than put the date that she actually came in, they would put the date that she actually was arrested. And this was actually called accurate dating among the employees at CSOSA. It was done to create an accurate record because judges wanted to know, discrepancies would be considered or would take place when you had an offender who, like he said, may have been falsely arrested. They needed to know when this particular person was arrested. So the agency made it actually easy, or I should say the employees made it actually easier for the agency to accurately reflect when that person was arrested. And that's simply what backdating is. As a matter of fact, now backdating is allowed in the agency and they call it editing. And so that's not in the record, but that was something that has occurred since this case has come into being. So I just want to make that point. Government counsel has not submitted any case law that suggests that the credibility of Ms. Johnson's witness should be disconnected or should not even be looked at. He makes reference to physical documents, but again, the physical documents do not suggest anything. There are discrepancies in the physical documents that can be taken both ways. And I think that you need someone else to create, to have testimony, to talk about the procedures and the protocol in the agency to say, this is why these documents say what they're saying. And this is what the government has failed to do. So in final, I would just like to say that would the court please reverse this decision of affirming the board's removal of Ms. Johnson because we believe that the penalty in this case is excessive. Thank you. Thank you, Mr. Crump. Mr. Alexander, the case is dismissed.